State of FLORIDA, Plaintiff,

v.

UNITED STATES of America et al., Defendant.

Case No. 4:12mc3–RH/CAS.

United States District Court, N.D. Florida, Tallahassee Division.

Aug. 10, 2012.

Ashley E. Davis, Daniel Elden Nordby, Florida Department of State, Tallahassee, FL, for Plaintiff.

Elise Sandra Shore, U.S. Dept. of Justice, Washington, DC, Pamela A. Moine, U.S. Attorney, Pensacola, FL, for Defendant.

### ORDER DENYING THE MOTION TO COMPEL STATE LEGISLATORS AND STAFF MEMBERS TO APPEAR FOR DEPOSITIONS

ROBERT L. HINKLE, District Judge.

■ The issue in this proceeding is whether Florida state legislators have a privilege not to testify on matters at the core of their legislative functions. This order holds that they do have such a privilege and that it extends also to their staff members.

This proceeding is ancillary to a case pending in the United States District Court for the District of Columbia. The plaintiff in that case—the State of Florida—seeks preclearance of recent legislation, as required by section 5 of the Voting Rights Act of 1965. Parties who intervened in that case in opposition to preclearance—referred to in this order as intervenors even though they are original parties here—have served subpoenas in this district under which specific members of the Florida Legislature and staff members would be required to sit for depositions. The defendant in that case—the United States—supports the effort to take the depositions. The state, legislators, and staff members have taken identical positions in opposition to the depositions; for convenience, this order often refers to them collectively as "the state."

The state notified the intervenors of its objection to the depositions. To avoid delay, the intervenors promptly filed a motion in this district to compel the legislators and staff members to appear. The proposed depositions would take place in this district, making this the proper forum for the motion to compel. With commendable professionalism, the parties promptly briefed and submitted the issues, so that a ruling could be made without delay. The ruling was announced at some length on the record of the hearing and is summarized here.

An issue in a preclearance case is legislative purpose. The testimony of legislators may be relevant on that issue. See Fed.R.Evid. 401 (defining relevance broadly to include evidence that has "any tendency to make a fact" "of consequence" "more or less probable than it would be without the evidence"). A single legislator's testimony on the legislator's own purpose, or a single legislator's opinion testimony about other legislators' purpose, may not say much about the actual overall legislative purpose, but the testimony may say enough to move the needle at least a little, and relevance requires nothing more. Similarly, a legislator's or staff member's testimony about the progress of a bill through the legislature, or about similar matters, may be relevant. The conclusion that such testimony may be relevant is consistent with the routine practice of the Department of Justice, when considering a request for *administrative* preclearance under the Voting Rights Act, to seek out the views of legislators.

It thus is not surprising that states seeking judicial preclearance routinely offer the testimony of legislators, and courts routinely admit it. A legislator who agrees to testify of course may be deposed; by voluntarily testifying, the legislator waives any legislative privilege on the subjects that will be addressed in the testimony. The state does not assert otherwise.

But here the state has chosen not to introduce the testimony of any legislator. The proposed depositions thus cannot be justified as discovery of the other side's evidence. And the legislators have not waived any privilege by agreeing to testify.

Whether the legislators and staff members have a privilege not to give the proposed deposition testimony is an issue of federal common law "as interpreted by United States courts in the light of reason and experience." Fed.R.Evid. 501. The

parties have cited no case—under the Voting Rights Act or in any other context—in which a state legislator who has not agreed to testify at a trial has been compelled to sit for a deposition addressing legislative functions. Nor have they cited any Voting Rights Act case in which a legislator has successfully invoked legislative privilege. The situation apparently has never come up, perhaps because states usually choose to offer legislative testimony, and perhaps because when states do not offer legislative testimony, opponents usually do not seek to take depositions of this kind. The issue of legislative privilege in this context is one of first impression.

But legislative purpose is an issue in many other cases, not just those arising under the Voting Rights Act. Indeed, in many equal-protection cases, legislative purpose is an issue that precisely mirrors the issue in a Voting Rights Act case. In equal-protection cases, as in Voting Rights Act cases, the critical question often is whether the legislature acted with a discriminatory purpose. *See, e.g., Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The relevance of a legislator's testimony on the issue of discriminatory purpose and the legislator's privilege not to testify thus are identical in equal-protection and Voting Rights Act cases.

The Supreme Court has addressed these matters in language squarely applicable here:

> The legislative or administrative history [of the legislative action] may be highly relevant, especially where there are contemporaneous statements by members of the decisionmaking body, minutes of its meetings, or reports. In some extraordinary instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then *such testimony frequently will be barred by privilege.*

*Vill. of Arlington Heights v. Metro. Housing Dev. Corp.,* 429 U.S. 252, 268, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (citing *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), and *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)) (emphasis added). The Court added:

> This Court has recognized, ever since *Fletcher v. Peck,* 6 Cranch 87, 130–31, 3 L.Ed. 162 (1810), that judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government. Placing a decisionmaker on the stand is therefore "usually to be avoided."

*Arlington Heights,* 429 U.S. at 268 n. 18, 97 S.Ct. 555 (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

*Arlington Heights* accurately sets out the law on this subject. The considerations that support the result include the burden that being compelled to testify would impose on state legislators, the chilling effect the prospect of having to testify might impose on legislators when considering proposed legislation and discussing it with staff members, and perhaps most importantly, the respect due a coordinate branch of government. Legislators ought not call unwilling judges to testify at legislative hearings about the reasons for specific judicial decisions, and courts ought not compel unwilling legislators to testify about the reasons for specific legislative votes. Nothing in the Voting Rights Act suggests that Congress intended to override this long-recognized legislative privilege.

■ To be sure, a state legislator's privilege is qualified, not absolute; a state legislator's privilege is not coterminous with the privilege of a member of Con-

gress under the Constitution's Speech and Debate Clause. Thus, for example, in *United States v. Gillock*, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980), the Supreme Court held that a state legislator had no legislative privilege in a federal criminal prosecution for bribery. The court distinguished *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)—one of the cases relied on in *Arlington Heights* for the proposition that a state legislator's testimony on legislative purpose often is privileged—on the ground that it was a civil case. But even if the state legislative privilege is qualified in civil as well as criminal cases, there is no reason not to recognize the privilege here. Voting Rights Act cases are important, but so are equal-protection challenges to many other state laws, and there is nothing unique about the issues of legislative purpose and privilege in Voting Rights Act cases.

The intervenors say Florida does not recognize a legislative privilege for its own legislators and that a federal court thus also should not recognize a privilege. As set out above, the question of legislative privilege in a Voting Rights Act case is a question of federal law. Even so, if a state indeed did not recognize a privilege for its own legislators, the case for recognizing a federal privilege would be weaker. This makes no difference here, because Florida *does* recognize a state legislative privilege. This is confirmed by a decision rendered in the interim between the ruling announced on the record in this case and the issuance of this written order. *See Fla. House of Representatives v. Expedia, Inc.*, 85 So.3d 517 (Fla. 1st DCA 2012). If faced with the issue, the Florida Supreme Court almost surely would agree.

■ So the legislators have a federal legislative privilege—at least qualified, if not absolute—not to testify in this civil case about the reasons for their votes.

The privilege is broad enough to cover all the topics that the intervenors propose to ask them and to cover their personal notes of the deliberative process. The privilege also extends to staff members at least to the extent that the proposed testimony would intrude on the legislators' own deliberative process and their ability to communicate with staff members on the merits of proposed legislation. *See, e.g., Gravel v. United States*, 408 U.S. 606, 618, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (holding "that the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself").

For these reasons and those set out on the record of the hearing on these issues,

IT IS ORDERED:

The motion to compel legislators and staff members to appear for depositions, ECF No. 1, is DENIED. The clerk must close the file.

SO ORDERED.